# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DONNA HOLT,                                          Case No. 1:10-cv-439

        Plaintiff,                              Spiegel, J.

                                    Bowman, M.J.

   vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Donna Holt filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes and also move the Court to remand this case pursuant to Sentence Six of 42 U.S.C. §405(g).  Pursuant to local practice, this case has been referred to the undersigned for initial consideration and a report and recommendation.  28. U.S.C. §636(b).  As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

## I.  Summary of Administrative Record

On January 30, 2007, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB), alleging a disability onset date of January 26, 2005, due to depression, herniated disk, hypertension, asthma, diabetes,

and blurred vision.  (Doc. 8-5 at 2-12, 8-6 at 8).[1]  She was 43 years old at the time of her alleged disability and 48 years old at the time of the ALJ's decision.  (Doc. 8-2 at 21).  After Plaintiff's claims were denied initially and upon reconsideration, (Doc. 8-3 at 13-16, Doc. 8-4 at 2-8, 11-16), she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  (Doc. 8-4 at 17-18).  On August 17, 2009, an evidentiary hearing was held in Cincinnati, Ohio, at which Plaintiff was represented by counsel.  (Doc. 8-2 at 24-68).  At the hearing, ALJ, Larry A. Temin ("ALJ Temin"), heard testimony from Plaintiff and Kim Jedikowski, Plaintiff's case manager from the Greater Cincinnati Behavioral Health Services.  ALJ Temin also heard from Mark A. Pinti, ("VE Pinti") an impartial vocational expert.  (*Id.*).

On September 29, 2009, ALJ Temin entered his decision denying Plaintiff's SSI and DIB applications.  (Doc. *Id.* at 10-23).  The appeals Council denied her request for review.  (*Id.* at 2-5).  Therefore, ALJ Temin's decision stands as the Defendant's final determination.

ALJ Temin's "Findings," which represent the rationale of the decision, were as follows:

1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2005.

2.  The claimant has not engaged in substantial gainful activity (SGA) since January 26, 2005 the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3.  The claimant has the following "severe" impairments: lumbar degenerative disc disease; lumbar strain, obesity; asthma; bipolar disorder, type II versus major depression, recurrent versus personality disorder, with

---

[1] Plaintiff previously filed applications for SSI and DIB on November 15, 2002.  Those claims were denied by Administrative Law Judge, Sarah J. Miller ("ALJ Miller") on January 25, 2005.  (Doc. 8-2 at 13, Doc. 8-3 at 5-12).

borderline personality features (20 CFR 404.1520(c) and 416.920(c)).

……………………

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

……………………

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work activity except as follows: She can lift and/or carry up to ten pounds frequently and up to twenty pounds occasionally.  The claimant can stand and/or walk for about six hours during the course of an eight-hour workday, and she can sit for about six hours during the course of an eight-hour work day.  The claimant must have the opportunity to alternate position between sitting and standing or walking every one to two hours.  She can never climb ladders, ropes, or scaffolds.  She can never balance or crouch.  The claimant can climb ramps and/or stairs, stoop, kneel, and crawl no more than occasionally.  She must avoid hazards such as unprotected heights and dangerous machinery.  She must also have no concentrated exposure to fumes, noxious odors, dusts, and gases.  The claimant is able to remember and carry out only short and simple instructions.  She cannot interact with the general public, and she cannot interact with coworkers or supervisors more than occasionally.  Her job should not require more than ordinary and routine changes in work setting or duties or more than simple work-related decisions.

……………………

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

……………………

7.  The claimant was born on April 18, 1961 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P,

Appendix 2).

……………………

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.96(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 26, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.* at 16-22).  Thus, ALJ Temin concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB.  (*Id.*).

On appeal to this Court, Plaintiff maintains that ALJ Temin erred by: 1) relying on Acquiescence Rulings 98-3(6) and 98-4(6) to avoid considering new and material evidence in the record that showed Plaintiff's condition had worsened since her previous unfavorable decision on January 25, 2005; 2) improperly assessing Plaintiff's mental residual functional capacity; and 3) inadequately assessing Plaintiff's credibility. In addition, as a result of ALJ Temin's alleged errors, Plaintiff is seeking a remand pursuant to Sentence Six of 42 U.S.C. § 405(g).

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both SSI and DIB.  *See Bowen v. City of New York,* 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

4

performing his past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen,* 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the Court should consider the record as a whole.  *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.   If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency ("SSA") is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimants impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimants impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past

relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. §423(d)(1)(A). In this case, Plaintiff alleges that the identified errors at the fourth and fifth steps of the sequential analysis require this Court to reverse the Commissioner's decision.

### B. Acquiescence Rulings 98-3(6) and 98-4(6)

Plaintiff's first assignment of error asserts that ALJ Temin erred when he adopted ALJ Miller's previous unfavorable decision denying Plaintiff's applications for SSI and DIB benefits. Plaintiff argues that ALJ Temin improperly relied on Acquiescence Rulings 98-3(6) and 98-4(6) to avoid considering new and material evidence in the record that showed Plaintiff's condition had since worsened since ALJ Miller's denial. (Doc. 12 at 9). Plaintiff asserts that pursuant to Acquiescence Rulings 98-3(6) and 98-4(6), an adjudicator must adopt the findings made by an ALJ or Appeals Council on a prior claim, unless there is new and material evidence. (*Id.*). Plaintiff claims that ALJ Temin ignored the new objective medical evidence that shows she had worsening

symptoms with regard to back, hip, and knee pain, and asthma.  (*Id.* at 9-11).

The United States Court of Appeals for the Sixth Circuit held in *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997) that, "the principles of *res judicata* can be applied against the Commissioner.  When the Commissioner has a made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."  (*Id.* at 842, citations omitted).  Furthermore, "[a]bsent evidence of improvement on a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  (*Id.*).  In *Drummond,* the Court of Appeals held that, by applying *res judicata*, the Commissioner was bound to the prior conclusion that claimant had the residual functional capacity to perform sedentary work because the Commissioner did not produce substantial evidence showing that claimant's condition had improved significantly.  (*Id.).*  Thus, given the claimant's age and limitation to sedentary work, the Court of Appeals found her eligible for benefits.  (*Id.*).  The Court of Appeals held that, "the burden is on the Commissioner to prove changed circumstances and therefore escape the principles of res judicata." (*Id.* at 843).

After *Drummond,* the Commissioner issued an Acquiescence Ruling mandating ALJ's in Ohio (and other states within the Sixth Circuit) to follow *Drummond* by applying *res judicata* to a prior assessment of a claimant's residual functional capacity and other findings made as a part of a sequential evaluation.  The Acquiescence Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant

is disabled with respect to the unajudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations, or rulings affecting the finding or method for arriving at the finding.

AR 98-4(6), 1998 WL 283902 at *3 (June 1, 1998).

In this case, Plaintiff previously filed SSI and DIB applications on November 15, 2002. (Doc. 8-2 at 13, Doc. 8-3 at 5). On January 25, 2005, ALJ Miller found that Plaintiff was not disabled. (Doc. 8-3 at 2-16). However, ALJ Miller also found that although Plaintiff was not disabled, Plaintiff had severe lumbar degenerative disc disease and strain, and obesity that placed upon her the following exertional limitations: 1) lifting/carrying up to 10 pounds frequently and 20 pounds occasionally; 2) standing/walking 6 hours in an eight hour work day; 3) sitting 6 hours a day; 4) being able to alternate positions between sitting and standing or walking every one or two hours; 5) never climbing ladders, ropes or scaffolds; never balancing or crouching; 6) occasionally climbing ramps and stairs; 7) occasionally stooping, kneeling and crawling; and 8) avoid hazards like unprotected heights and dangerous machinery. (Doc. 8-2 at 18, 8-3 at 12).

Following ALJ Miller's decision, Plaintiff filed SSI and DIB applications on January 30, 2007. (Doc. 8-5 at 2-12). On September 29, 2009, ALJ Temin determined that Plaintiff was not disabled. In making his determination, ALJ Temin relied on the evidence associated with Plaintiff previous SSI and DIB applications. (Doc. 8-2 at 13-14, 19). In doing so, ALJ Temin carefully explained that Plaintiff failed to present any new or material evidence that provided a basis for a different physical RFC finding than that which was previously found by ALJ Miller. (*Id.*). As a result, ALJ Temin properly concluded that, pursuant to *Drummond* and AR 98-4(6), he was bound by ALJ Miller's

previous findings.

Similarly to ALJ Miller's previous determination, ALJ Temin noted that from January 26, 2005, through September 29, 2009, Plaintiff had severe lumbar degenerative disc disease and strain, and obesity that placed upon her the following exertional limitations: 1) lifting/carrying up to 10 pounds frequently and 20 pounds occasionally; 2) standing/walking 6 hours in an eight hour work day; 3) sitting 6 hours a day; 4) being able to alternate positions between sitting and standing or walking every one or two hours; 5) never climbing ladders, ropes or scaffolds; 6) never balancing or crouching; occasionally climbing ramps and stairs; 7) occasionally stooping, kneeling and crawling; and 8) avoiding hazards like unprotected heights and dangerous machinery.  (Doc. 8-2 at 18, Doc. 8-3 at 12).

ALJ Temin also explained that he found additional nonexertional limitations as of January 26, 2005, based on Plaintiff's subsequently diagnosed impairments.  (8-2 at 13-14, 16, 18-19).  However, ALJ Temin concluded that these nonexertional limitations did not rise to a debilitating level.  (*Id.*).  ALJ Temin found that Plaintiff had additional severe impairments of asthma, and bipolar disorder type II versus major depression, and a recurrent personality disorder, with borderline personality features.  (*Id.* at 14, 16).  As a result, ALJ Temin placed upon Plaintiff the following limitations: 1) no concentrated exposure to fumes, noxious odors, dusts, and gases; 2) no interaction with the general public and occasional interaction with coworkers or supervisors; and 3) doing work that did not require more than ordinary and routine changes in the work setting or duties, or more than simple work-related decisions.  (*Id.* at 14, 18).

ALJ Temin also noted that although thoracolumbar spine x-rays continued to

show lumbar abnormalities, and left knee x-rays showed osteoarthritis; Plaintiff had normal gait, she could rise from a seated position, and on examination she had no difficulty getting on and off the examining table.  (Doc. 8-2 at 16, Doc. 8-7 at 47, 61, 222-223, Doc. 8-8 at 7).  ALJ Temin pointed out that Plaintiff's bilateral straight leg raising was normal and there were no motor, sensory, or reflex abnormalities.  (Doc. 8-7 at 47, 58, 61-62, 220, 222, Doc. 8-8 at 7).  In regards to Plaintiff's asthma, the Court notes that the evidence as of January 26, 2005, showed that Plaintiff's asthma was controlled with medications.  (Doc. 8-8 at 36).  The Court notes that an impairment that is controlled with medication is not disabling.  *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993).  In addition, the majority of evidence Plaintiff provided as to lung examinations was normal or close to normal.  (Doc. 8-7 at 47, 61, 63, 199, 242).  Further, Plaintiff testified that she worked as a concession stand attendant for the Cincinnati Reds from March 2007 to September 2008, which required her to be on her feet for long periods of time.  (Doc. 8-2 at 32-33).

Given the lack of new and/or material information on behalf of Plaintiff, the Court notes that ALJ Temin properly placed significant weight on the physical RFC assessments that were completed by Dimitri Teague, M.D. ("Dr. Teague") and Jeffrey Vasiloff, M.D. ("Dr. Vasiloff") and on the consultative examination report of Jennifer Wischer-Bailey, M.D. ("Dr. Wischer-Bailey").  (*See* Doc. 8-2 at 20-21, Doc. 8-7 at 60-67).  ALJ Temin noted,

> [B]oth consultants adopted the residual functional capacity contained in the previous ALJ decision.  They reasoned that the additional medical evidence received since the prior ALJ decision showed that the claimant's physical impairments, including the claimant's subsequently diagnosed asthma, did not prevent her from performing light work.  Moreover, Dr. Wischer-Bailey's examination findings were normal, and as a result, she

10

opined that the claimant could perform a "moderate" amount of exertional work activity, having difficulty only with prolonged kneeling and the need to work in a dust-free environment.  The undersigned finds that both the consultants and Dr. Wischer-Bailey's opinions are consistent with the record as a whole.  It is important to note that no contradictory opinion from any treating source exists in the record.

(Doc. 8-2 at 20-21).

Moreover, the Court finds no apparent error in ALJ Temin's evaluation of the subsequent medical evidence that was provided by Plaintiff.  The medical evidence Plaintiff submitted took the form of treatment notes, forms, and similar records rather than actual opinions of her treating physicians regarding her condition.  (*See* Doc. 8-7 at 2-47, 54-59, 88-89, 98-160, 165, 247, Doc. 8-8 at 3-99).  In the absence of any treating physicians' opinions, ALJ Temin was justified in placing significant weight on Dr. Wischer-Bailey's consultative examination and the record reviews by Dr. Teague and Dr. Vasiloff.  Said examinations offered the only actual "new opinions" appearing in the record as to Plaintiff's physical RFC.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see also Peebles v. Chater,* 85 F.3d 629 [table], 1996 WL 229528 (6th Cir. May 6, 1996) ["in the absence of any evidence from treating physicians … the ALJ was required to rely on the reports of the consulting physician."]

Therefore, because Plaintiff failed to present any new and/or material evidence in the record that showed Plaintiff's condition had worsened since ALJ Miller's previous unfavorable decision, ALJ Temin acted properly by following *Drummond* and Acquiescence Rules 98-3(6) and 98-4(6) by adopting said decision.  Thus, for the reasons stated above, Plaintiff's argument does not have merit.

### C.  Plaintiff's Mental RFC

In Plaintiff's next assignment of error, she argues that the objective evidence

from Plaintiff's mental health treatment providers supports a more restrictive RFC than that provided for by ALJ Temin. (Doc. 12 at 12). According to Plaintiff, ALJ Temin incorrectly relied on the consultative examination report of Michael Nelson, Ph.D. ("Dr. Nelson") and the reports from the non-examining state agency psychologists, Carl Tishler, Ph.D. ("Dr. Tishler") and Mel Zwissler, Ph.D. ("Dr. Zwissler"). (*Id.*). Plaintiff complains that ALJ Temin failed to discuss any of the medical evidence submitted by Plaintiff's treating providers. (*Id.*). Plaintiff asserts that ALJ Temin erred by not considering new medical evidence that was provided from Plaintiff's case manager and therapist, one week prior to the hearing. (*Id.* at 15). Plaintiff also asserts that a remand is warranted due to the existence of the new medical evidence that was submitted to the Appeals Counsel after ALJ Temin closed the record. (*Id.*). Such an argument falls under the purview of Sentence Six of 42 §405(g).[2]

In the present matter, the Court finds that ALJ Temin did not commit an error when he failed to afford Plaintiff's treating physicians' opinions controlling or significant weight. 20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is *well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." Id.* (emphasis added). *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). Thus "if the treating physician's opinion is not supported

---

[2] Sentence Six of 42 U.S.C. §405(g) provides in part:

The court may … at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…

by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. §1527(d)(2). Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230-231 (6th Cir. 1990) (affirming a finding of non-disability despite herniated disc and degenerative arthritis in the spine).

In this case, Plaintiff alleges that she has severe anger and rage issues. (Doc. 12 at 13). Plaintiff testified that her rage does not have a stop button. (Doc. 8-2 at 44). Plaintiff reported that although she is compliant with her medications, they have not controlled her anger. (*Id.* at 39). Plaintiff claims that these problems have been on-going for approximately two and a half years. (*Id.* at 41). Plaintiff admitted that she attacked co-workers on multiple occasions. (*Id.* at 49). Plaintiff also testified that she does not like being around people because she flies off the handle too easily. (*Id.* at 45). Plaintiff claimed that she has mood swings three to four times a week, and that she cannot work. (*Id.* at 54). Plaintiff reported low energy levels, low self esteem, crying spells and also testified that she has trouble concentrating and remembering things. (*Id.* at 42).

However, the Court notes that the record does not show that Plaintiff's mental health problems and anger are as significant as she claims. For example, the record does not show that Plaintiff ever lost a job due to anger issues, nor does it show an inability for her to work with others. (Doc. 8-8 at 43, 46, 49, 52). In fact, on May 1,

2008, Plaintiff was enrolled in art classes. (*Id.* at 67). On April 24, 2009, treatment records indicated that Plaintiff's angry temperament had improved and that she had learned how to deal with her rage issues. (*See Id.* at 43). The Court also notes that Plaintiff was able to work as a concession stand attendant (a job that requires significant interaction with others) from March 2007 to September 2008 without serious confrontation or any episodes of violence.[3] (Doc. 8-2 at 32-33).

Given the above, ALJ Temin properly placed significant weight on the assessments provided by the state agency psychological consultants and the consultative examination of Dr. Nelson because they provided no more than moderate limitations on Plaintiff's mental RFC. On March 23, 2007, Dr. Nelson opined that Plaintiff's ability to relate to others was moderately impaired; she could do simple repetitive tasks that did not require detailed instructions; Plaintiff's ability to understand, remember and follow instruction was not impaired; her ability to maintain attention, concentration, and persistence and pace for simple repetitive tasks was not impaired; and her ability to withstand the stress and pressure of day to day work activity was moderately impaired. (Doc. 8-7 at 52-53).

On April 23, 2007, Dr. Tishler opined that Plaintiff could understand and remember 2-3 step instructions that were routine and well explained; superficially relate to coworkers; not provide customer service to the public; adhere to a predictable routine; and do predictable routine work that was not fast-paced, and did not require problem solving or direct cooperation with others. (*Id.* at 72). Dr. Tishler found that Plaintiff was moderately limited in maintaining social functioning and mildly limited in

---

[3] Plaintiff was later fired from her job as a concession stand attendant. However, Plaintiff testified that she was fired from this job due to a violation of a company alcohol policy, not because of any anger problems. (Doc. 8-2 at 36, 48).

maintaining concentration, persistence and pace.  (*Id.* at 84).  On September 1, 2007, Dr. Zwissler affirmed Dr. Tishler's opinion, noting that all evidence had been reviewed. (*Id.* at 162).  Based on the lack of evidence Plaintiff provided in the record, ALJ Temin reasonably relied on the opinions of these psychologists.  (Doc. 8-2 at 19-21).  ALJ Temin properly found that both the consultants' and Dr. Nelson's opinions were consistent with the record as a whole.  ALJ Temin also pointed out that no contradictory opinion from any treating source exists in the record.  (*Id.*).  Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

In regards to the "new" evidence that Plaintiff claims was provided to ALJ Temin on August 10, 2009, one week prior to the hearing, Plaintiff states that these records showed the frequency, intensity, and severe nature of her anger issues.  (Doc. 12 at 14).  Plaintiff claims that her case manager/therapist often noted that she experienced extreme anger with the smallest situation and struggled to maintain emotional stability. (*Id.*).  As a result, Plaintiff argues that on this basis alone, her claim should be remanded for the existence of new and material evidence.  (*Id.* at 15).

However, pursuant to Sentence Six of 42 U.S.C. §405(g),  a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is material, and also establishes good cause for her failure to present the evidence to the ALJ.  *See Bass v. McMahon,* 499 F.3d 506 (6th Cir. 2007); *Brainard v. Sec'y of Health and Human Servs.,* 899 F.2d 679, 681 (6th Cir. 2007); *Brainard v. Sec'y of Health & Human Servs.,* 899 F.2d 679, 681 (6th Cir. 1989).  Evidence is "new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)."  *Foster v. Halter,* 279 F.3d 348, 357

(6th Cir. 2001).  "Material evidence is evidence that would likely change the Commissioner's decision."  *Bass,* 499 F.3d at 513 (citation omitted).  Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Secretary of Health & Human Services,* 727 F.2d 551, 554 (1984)(per curiam).  (*Id.*).  Merely cumulative evidence does not establish good cause for a remand.  *Borman v. Heckler,* 706 F.2d 564, 568 (6th Cir. 1983); *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980).  The Plaintiff has the burden of establishing that the evidence is new and material and that there is good cause for not having presented the evidence to the Administrative Law Judge.  (*Id.,* citing, *Oliver v. Secretary of Health & Human Services,* 804 F.2d 964, 966 (6th Cir. 1986).

In this case, Plaintiff argues that since the evidence related to her mental health treatment was re-submitted to the Appeals Council, and since they failed to address the new evidence, her claim should be remanded.  However, Plaintiff provides no further argument or explanation in her brief as to why this should happen.  As a result, Plaintiff has effectively waived her right to such a claim.  *See McPhereson v. Kelsy,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues averted in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (citation and internal quotations omitted).  Therefore, based on Plaintiff's failure to set forth a specific argument, the Court finds that Plaintiff's claim does not have merit, and thus, a remand pursuant to Sentence Six of 42 U.S.C. §405(g) is not appropriate at this time.  Of course, to the extent that Plaintiff has new evidence

that her condition has worsened, she is free to submit a new application for benefits. *See,* e.g., *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 685 (6th Cir. 1992). It is the function of this Court only to review whether the "new" evidence warrants remand under Sentence Six of 42 U.S.C. §405(g).  In this case it does not.

### D.  Credibility Assessment and Evaluation of Pain

Plaintiff's third claim of error finds fault with ALJ Temin's conclusion that her testimony was not entirely credible.  Specifically, Plaintiff claims that ALJ Temin failed to consider all the factors listed in 20 C.F.R §404.1529 and Social Security Ruling 96-7p. With respect to Plaintiff's subjective complaints of back, hip and knee pain, asthma, and mental limitations, Plaintiff alleges that ALJ Temin failed to consider her symptoms and testimony to the extent that they purported to describe a condition of a disabling nature. (Doc. 12 at 15-16).  Plaintiff argues that ALJ Temin failed to consider her treatment at the emergency room and with Kim Jedlikowski, Plaintiff's case manager at Greater Cincinnati Behavioral Health Services.  (*Id.).*  Plaintiff also claims that her testimony is corroborated by the objective medical evidence.  (*Id.* at 16).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d at 475.  However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."  *Id.* at 476.  (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's

demeanor and credibility." *Walters v. Comm'r of Soc. Sec.,* 127 F.2d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 378 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

In this matter, ALJ Temin noted various factors in his decision which caused him to question Plaintiff's credibility. For instance, Plaintiff testified that she is currently receiving unemployment compensation. (Doc. 8-2 at 30). ALJ Temin stated that it is appropriate to question a disability claimant concerning the patent inconsistency between the claimant's filing of a successful claim for unemployment benefits, which requires the claimant to attest to being *able* to work, and the claimant's filing of a disability claim, which requires an attestation to being *unable* to work. (*See Jernigan v. Sullivan,* 948 F2d 1070. (1991, CA8), *Sauter v. Sullivan,* 1991 WL 21664 (E.D. Pa. 1991) (emphasis added). ALJ Temin concluded that Plaintiff's successful claim for unemployment benefits is inconsistent with her allegations about the nature and severity of her impairments. (Doc. 8-2 at 19-20). Moreover, on March 23, 2007 Plaintiff told Dr. Nelson that she is able to cook and clean. (Doc. 8-7 at 51). Plaintiff testified that she cleans her room and does the laundry. (Doc. 8-2 at 46-47). ALJ Temin also noted that although Plaintiff stated at the hearing that she was in severe pain, she sat through the entire hearing, which lasted over an hour and thirty minutes without incident. (*Id.* at 19).

ALJ Temin found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and that Plaintiff has

established by sufficient evidence that she suffers from the following "severe" impairments: lumbar degenerative disc disease; lumbar strain; obesity; asthma; bipolar disorder, type II versus major depression, recurrent versus personality disorder, with borderline personality features. (*Id.* at 16, 19).  However, in reviewing Plaintiff's medical treatment records, ALJ Temin also found that Plaintiff's statements concerning the severity, intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the record as a whole. (*See Id.* at 19).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Here, ALJ Temin noted that the objective medical evidence, including objective medical studies, indicate an essentially normal back examination. (Doc. 8-7 at 60-68).  With regard to Plaintiff's asthma, there is no medical evidence in the record to support a finding that it limits work activity more than what ALJ Temin provided for in his RFC. Plaintiff alleges problems resulting from her asthma.  However, the objective medical evidence demonstrates that these problems have been managed fairly well with medical intervention. (Doc. 8-8 at 36).  Also, Plaintiff testified that she worked as a concession stand attendant from March 2007 to September 2008, a job that required her to be on her feet for long periods of time. (Doc. 8-2 at 32-33).  Apparently, Plaintiff did not have significant trouble working this job with her asthma.

Therefore, because ALJ Temin found inconsistencies between the objective medical evidence and Plaintiff's testimony about the extent of her pain and limitations, it was permissible for him to discredit Plaintiff's testimony about the severity of her

symptoms.  As a result, given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports ALJ Temin's decision to discredit Plaintiff's statements about the severity of her symptoms.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

*s/Stephanie K. Bowman*
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DONNA HOLT,                                    Case No. 1:10-cv-439

        Plaintiff,                            Spiegel, J.

                                                 Bowman, M.J.

    vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.                            **NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).